IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MAURA B. C.,

                        Plaintiff,

            v.                                    Civil Action No.
                                                  5:21-CV-0294 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     CHRISTOPHER T. MILLIMAN, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                NATASHA OELTJEN, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

_____

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. § 405(g), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in July of 1964, and is currently fifty-eight years of age.  She was fifty-two years old on both her alleged onset date of May 12, 2016, and on March 31, 2017, the date on which she was last insured for benefits ("DLI") under Title II.  Plaintiff stands five feet in height, and weighed approximately one hundred and forty pounds during the relevant time period.  Plaintiff lives in the lower half of a house in Baldwinsville, New York, with her husband, and her son and his wife and two children live in the upper half of that residence.

In terms of education, plaintiff completed the twelfth grade.  She has worked in the past as an administrative assistant for a landscaping company, and as a bartender.

2

Physically, plaintiff alleges that she suffers from pain in her neck due to a previous spinal injury, carpal tunnel syndrome in both wrists, glaucoma, and irritable bowel syndrome ("IBS") causing frequent diarrhea. She received treatment for her IBS during the relevant period in the form of medication and dietary guidance from St. Joseph's Hospital, primary care physician Dr. John Michaels, and gastroenterologist Dr. Aran Laing. Plaintiff additionally alleges that she suffers from mental impairments including posttraumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), anxiety, and depression, for which she treated during the relevant period with medication from Dr. Michaels.[2]

Plaintiff reported at the 2019 administrative hearing in this matter that her IBS and related bowel incontinence issues became more severe in May of 2016 such that she now needs to wear diapers due to having accidents five or seven days per week, when she cannot make it to the bathroom in time.  She testified that she also has accidents at night, which interrupt her sleep and decrease her ability to focus and concentrate.  Plaintiff additionally reported experiencing depression and anxiety in part related to her previous husband's 2003 suicide, which causes her to panic about

---

[2]      As will be discussed below, after plaintiff's date last insured, she began treating for her mental health impairments with licensed therapist Annette King.

3

driving, have difficulty being around people, and worry about everything.

She believes that her stress leads to exacerbated bowel symptoms.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for DIB payments under Title II of the Social Security Act on November 14, 2017.  In support of her application, she alleged a disability onset date of May 12, 2016, and claimed to be disabled due to IBS, glaucoma, carpal tunnel syndrome, cataracts, a spine injury, a hiatal hernia, PTSD, depression, and anxiety.

A hearing was conducted on October 30, 2019, by ALJ Robyn L. Hoffman to address plaintiff's application for benefits.  ALJ Hoffman issued an unfavorable decision on November 27, 2019.  That opinion became a final determination of the agency on January 19, 2021, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

    B.    The ALJ's Decision

In her decision, ALJ Hoffman applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period. Proceeding to step two, ALJ Hoffman found that plaintiff suffered from

severe impairments that impose more than minimal limitations on her ability to perform basic work functions during the relevant period, including IBS and a history of spinal injury.  As part of her step two finding, the ALJ found that plaintiff's other medically determinable impairments of Chiari malformation, bilateral carpal tunnel syndrome, glaucoma, ADHD, anxiety, and PTSD did not qualify as severe impairments during the relevant time period.

At step three, ALJ Hoffman examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions did not meet or medically equal any of those listed conditions, specifically considering Listings 1.04 and 5.06.

ALJ Hoffman next surveyed the available record evidence and concluded that, during the relevant time period, plaintiff retained the residual functional capacity ("RFC") to perform a less than a full range of light work with the following restrictions:

> she could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds; and sit for up to six hours as well as stand or walk for approximately six hours in an eight-hour day with normal breaks; she could only occasionally climb ramps, stairs, ladders, ropes or scaffolds. And the claimant could perform frequent balancing, stooping, kneeling, crouching and crawling.

5

ALJ Hoffman found at step four that, with the above RFC, plaintiff remained capable of performing her past relevant work as an administrative assistant, which she found is classified as a sedentary position with a specific vocational preparation level ("SVP") of seven.  The ALJ then found, alternatively, that application of the Medical-Vocational Guidelines ("Grids"), particularly Medical-Vocational Rule 202.14, at step five would direct a finding of "not disabled," concluding that the nonexertional limitations in the RFC finding would have little or no effect on the occupational base of light work.  Based upon these findings, ALJ Hoffman concluded that plaintiff was not disabled during the relevant period between May 12, 2016, and March 31, 2017.

C.   This Action

Plaintiff commenced this action on March 16, 2021.[3]  In support of her challenge to the ALJ's determination, plaintiff argues that the RFC finding is unsupported by substantial evidence due to (1) the ALJ's erroneous finding that her mental impairments were not severe and her failure to consider how anxiety worsened or affected her IBS, and (2) the

---

[3]   This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ALJ's failure to properly evaluate the opinions from treating physician Dr.

John Michaels and treating licensed clinical social worker ("LCSW")

Annette King.  Dkt. No. 12.

Oral argument was conducted in this matter, by telephone, on July

12, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is subject to a "very deferential" standard of review, and is

limited to analyzing whether the correct legal standards were applied, and

whether the decision is supported by substantial evidence.  *Brault v. Soc.*

*Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d

Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there

is reasonable doubt as to whether the ALJ applied the proper legal

standards, the decision should not be affirmed even though the ultimate

conclusion reached is arguably supported by substantial evidence.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the

correct legal standards have been applied, and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the

decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

     B.     <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§

9

404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

Before discussing the merits of plaintiff's arguments, it bears emphasizing that this case involves a closed period only, between plaintiff's alleged onset date of May 12, 2016, and March 31, 2017, the date upon which she was last insured for benefits under Title II.

Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case. 20 C.F.R. § 404.1520c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule"). An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the

supportability[4] and consistency[5] of those opinions.  20 C.F.R. §

404.1520c(b).  The ALJ also may – but is not required to – explain how he

or she considered the other relevant enumerated factors related to the

source's relationship with the claimant, including the length of any

treatment relationship, the frequency of examinations by the source and the

purpose and extent of the treatment relationship, whether the source had

an examining relationship with the claimant, whether the source specializes

in an area of care, and any other factors that are relevant to the

persuasiveness of that source's opinion.  20 C.F.R. § 404.1520c(c).

     1.   <u>The ALJ's Assessment of Plaintiff's Mental Impairments</u>

     Plaintiff first argues that the ALJ erred in failing to find her mental

impairments to be severe impairments, and in particular failing to consider

the fact that plaintiff's anxiety worsened the symptoms and effects of her

IBS.  Dkt. No 12, at 10-13.  Plaintiff further argues that, even if it was not

---

[4]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[5]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

required to find her mental impairments severe, the ALJ still erred by failing to include a limitation in the RFC finding to account for her finding at step two that plaintiff had a mild limitation in the area of concentration, persistence, and pace, and that such error is not harmless because even a mild limitation "would have a significant impact" on plaintiff's ability to perform her past work as an administrative assistant.  Dkt. No. 12, at 13-15.  I find that neither of these arguments has merit.

As to plaintiff's first argument, the ALJ's finding that plaintiff's various mental impairments were not severe during the relevant time period is supported by substantial evidence.  As the ALJ acknowledged, the only documented report of anxiety during the relevant period was shortly before plaintiff's date last insured, at which time she advised Dr. John Michaels that she had increased stress related to being in the midst of a custody hearing over her grandson and that she wanted medication to help her deal with the stress of that situation.  Administrative Transcript ("AT") at 17; *see* AT 281.[6]  In that treatment note, which is dated February 6, 2017, a little over one month before plaintiff's date last insured, Dr. Michaels notes that plaintiff requested a medication she could take on an as-needed basis, but

---

6       The Administrative Transcript is found at Dkt. No. 9, and will be referred to throughout this decision as "AT __."

she did not want something she needed to take daily, in order to cope with the stress of the custody proceedings.  AT 281.  Dr. Michaels continued her on Xanax, noting specifically that she could take that "as needed until the trial is over."[7]  AT 283.  The only other treatment note regarding care for mental health issues was from April 2016, at which time plaintiff reported experiencing increased stress, also related to custody proceedings, and requested medication to help her concentration in order to enable her to perform the tasks related to the proceedings, such as "making a lot of phone calls" and doing "a lot of computer work."  AT 396.  The ALJ also explicitly acknowledged this treatment record.  AT 17.  The ALJ additionally noted that plaintiff did not seek counseling or therapy for her mental health issues before her date last insured.  *Id.*  Nothing in those two treatment notes, which document plaintiff experiencing periods of increased stress related to a discrete life circumstance, undermines the ALJ's finding that plaintiff's mental impairments did not have a significant effect on her ability to work during the relevant time period.  Of note, those records do not indicate that plaintiff was experiencing any effects from her mental impairments, even under increased stress, that would impact her work-

---

[7]    As the ALJ noted, *see* AT 20-21, that treatment record also reported that plaintiff had not filled her Xanax prescription during the prior six months.  AT 281.

related functioning.

The ALJ also specified that she found the opinion from treating LCSW Annette King to be unpersuasive because LCSW King did not begin treating plaintiff until months after the date last insured, her opinion was not consistent with the medical evidence during the relevant time period, and her opinion was based in part on plaintiff's subjective reports rather than her own objective analysis. AT 17. Contrary to plaintiff's arguments, the ALJ's findings regarding LCSW King's opinion are supported by substantial evidence. LCSW King did not treat plaintiff during the relevant period and, accordingly, her assessment could not have represented her objective knowledge of plaintiff's functioning during the relevant period. Additionally, her opinion of very restricted mental functioning is at odds with the fact that the only reports by plaintiff of mental symptoms during the relevant period were with regard to temporary exacerbations of difficulty concentrating or stress specifically related to custody proceedings, and even that treatment was limited. The record also substantiates that plaintiff's mental symptoms worsened after the expiration of the relevant period. In a treatment note from June 2017, Dr. Michaels noted that plaintiff reported at the time that she "has been having increased anxiety," which spurred her to seek out finding a therapist. AT 437. By November 2017, she reported additional

worsening in her depression and anxiety.  AT 428.  This evidence of worsening after plaintiff's date last insured in particular supports the ALJ's finding that LCSW King's opinion was not a persuasive assessment of plaintiff's mental functioning during the relevant period, given that LCSW King had not treated plaintiff prior to that worsening.  Given these facts, the ALJ's finding that this opinion was not persuasive is supported by substantial evidence.

Plaintiff also argues that the ALJ's assessment of her mental impairment is insufficient because she failed to analyze the extent to which plaintiff's anxiety in particular impacts or worsens her IBS.  However, there was no reason for the ALJ to make any such consideration because there is no evidence in the record that indicates plaintiff's IBS symptoms were tied to her mental state.  While plaintiff points to a treatment note from Dr. Michaels and asserts that the record substantiates that her anxiety and other mental health issues were manifesting as IBS symptoms, the cited note makes no such link between the two conditions.  AT 434.  Dr. Michaels' listing of "chronic diarrhea" as a symptom in his opinion simply does not establish that her IBS was caused or even aggravated by her mental impairments.  AT 311.  LCSW King writes in her opinion form that "increased anxiety . . . frequently leads to diarrhea," but such statement is

not supported by any evidence and, as the ALJ noted, LCSW King's opinion appears to be based largely on plaintiff's subjective reports rather than her own objective assessment of plaintiff's conditions.  AT 316.  Later treatment evidence from 2018 indicates that plaintiff's IBS symptoms dramatically improved while she was on medication for a pancreatic insufficiency, something which, although well outside of the relevant time period, suggests that her IBS was related primarily to her pancreas rather than any mental impairment.  Simply stated, there was no need for the ALJ to discuss any link between her anxiety and IBS because such a connection is not supported by the record.

Plaintiff lastly argues that the ALJ erred by failing to include a limitation in the RFC finding that would account for the "mild" limitation she found in the area of concentration, persistence, and pace when assessing the effects of plaintiff's mental impairments at step two.  However, a finding of a certain degree of limitation in an area of mental functioning when engaging in the psychiatric review technique prescribed by the regulations for assessing the severity of a mental impairment does not require any specific corresponding limitation in the RFC finding.  "While the analysis at steps two and three concerns the *functional* effects of mental impairments, the RFC analysis at step four specifically considers *work-related* physical

and mental activities in a *work setting*," such that "a finding at steps two or three does not automatically translate to an identical finding at step four." *See Wells v. Colvin*, 87 F. Supp. 3d 421, 436 (W.D.N.Y. 2015) (citing *Golden v. Colvin*, 12-CV-0665, 2013 WL 5278743, at *3 (N.D.N.Y. Sept. 18, 2013) (Sharpe, J., Hines, M.J.)) (emphasis in original).  Moreover, plaintiff has not pointed to any evidence that would suggest she experienced an ongoing limitation in her ability to concentrate that would impact her work-related functioning.  She did report a desire for medication in order to concentrate better related to the child custody proceedings in April of 2016, but there is no further mention of any deficit in concentration throughout the rest of the relevant period.  Thus, any deficits plaintiff had experienced due to the circumstances of that proceeding appear to have been addressed by medication.  It is plaintiff's burden to show that greater restrictions are required by the evidence, and she has not done so in this instance.  *See Sandra D. v. Comm'r of Soc. Sec. Admin.*, 20-CV-1067, 2022 WL 344058, at *5 (N.D.N.Y. Feb. 4, 2022) (Kahn, J.) (noting that "a plaintiff bears the burden of demonstrating disability and the necessity of a greater RFC") (citing *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018)).

Based on the foregoing, I find that the ALJ did not err in her

assessment of plaintiff's mental impairments.

2.    The ALJ's Assessment of Dr. Michaels' Opinion

Plaintiff additionally argues that the ALJ erred in finding the opinion of treating physician Dr. John Michaels unpersuasive because the ALJ (1) erroneously stated that Dr. Michaels did not treat plaintiff during the relevant time period, and (2) the ALJ failed to explain how his opinion is inconsistent with the evidence in the record.  Dkt. No. 12, at 17-19.

In his opinion dated May 4, 2018, Dr. Michaels opined that plaintiff could sit for only twenty minutes at one time and less than two hours total, stand for twenty minutes at one time and stand or walk for less than two hours total, would require the ability to shift positions at will, could rarely lift even less than ten pounds, rarely perform postural maneuvers, rarely use her arms, hands or fingers, would sometime require unscheduled breaks five times per hour for fifteen-to-twenty minutes each, would be off-task more than twenty percent of the workday, would have more bad days than good days, and would be absent more than four days per month on average.  AT 311-13.  Dr. Michaels specifically opined that these limitations had been present since at least May 12, 2016.  AT 314.

It is true that ALJ Hoffman stated that she found that opinion unpersuasive in part because Dr. Michaels had not treated plaintiff until

November 9, 2017, which was after the date last insured.[8]  AT 21.  The ALJ

went on to also find, however, that the opinion nonetheless was not

consistent with the medical evidence of record from the relevant time

period and appeared to be based on plaintiff's subjective statements.  AT

21.  As the Acting Commissioner argues, the ALJ discussed Dr. Michaels'

treatment records from during the relevant time period, referring to him as

her "primary care provider," and therefore appears to have been aware of

Dr. Michaels' treatment relationship with plaintiff.  AT 20-21.  Although the

ALJ relied on the mistaken statement regarding treatment duration as a

reason for finding that opinion unpersuasive, I find that the other reasons

the ALJ provided render the error in that reasoning merely harmless.

More specifically, the ALJ found that the opinion was not consistent

with the evidence during the relevant time period, evidence which includes

Dr. Michaels' own treatment notes.  Plaintiff argues that the ALJ has failed

to show how that opinion is inconsistent with the other evidence, but fails to

point to any evidence that supports a finding of error.  The only treatment

during the relevant period come in the form of a few occasions where she

reported issues related to her IBS and two instances in which she reported

---

[8]     The ALJ's misconception of the treatment period for Dr. Michaels appears to be
based on a statement in Dr. Michaels' opinion itself, where he indicates that November
8, 2017, was the first office appointment where he had seen plaintiff.  AT 311.

either insufficient concentration or stress, as were already discussed

above.  Those treatment notes do not document anything to suggest the

level of limitation opined by Dr. Michaels. Notably, on May 12, 2016,

plaintiff was observed at the emergency room to have mild abdominal

distention with tenderness, diminished bowel sounds, suprapubic

tenderness to palpation, bilateral lower quadrant discomfort, epigastric

discomfort, and normal musculoskeletal findings; she was instructed only to

follow a bland diet for a week and follow up with her physicians.  AT 265-

66.  In July 2016, she reported to her gastroenterologist that her IBS was

worse, and that she was experiencing two-to-ten loose bowel movements

per day, but she did not report incontinence or nocturnal bowel movements.

AT 293.  Dr. Aran Laing noted that plaintiff reported smoking and having a

poor diet, he observed no abnormal objective signs, and he advised her to

follow a FODMAP diet and take dicyclomine.  AT 293-95.  The following

month, plaintiff reported to Dr. Michaels that she was changing her diet and

quitting smoking, and indicated that she was doing well overall.  AT 278.  I

note also that it was not until approximately eleven months after the date

last insured that plaintiff reported to any physician that she was

experiencing incontinence and had to use diapers.  AT 538.  The evidence

in the record for the relevant time period simply does not support the

extremely limited physical functioning opined by Dr. Michaels.

Based on the foregoing, I find that the ALJ's assessment of Dr. Michaels' opinion is supported by substantial evidence.  I also find that the RFC finding is supported by substantial evidence, as the ALJ explicitly relied on the evidence in the record and the prior administrative medical opinion of nonexamining state agency medical consultant Dr. Swati Gandhi, finding that opinion to be consistent with the evidence in the record as a whole.[9]  AT 21, 63-64; *see Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (finding decision supported by substantial evidence when it was consistent with some of the plaintiff's own statements, treatment notes from her physicians, and the opinion of the state agency psychologist); *see also Kirk T. v. Comm'r of Soc. Sec.*, 21-CV-0292, 2022 WL 2753567, at *6 (N.D.N.Y. July 14, 2022) (Hummel, M.J.) (collecting cases).

IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is

---

[9]     Plaintiff has not challenged the ALJ's reliance on Dr. Gandhi's opinion as to her physical functioning.

hereby

ORDERED that defendant's motion for judgment on the pleadings

(Dkt. No. 15) is GRANTED, plaintiff's motion for judgment on the pleadings

(Dkt. No. 12) is DENIED, the Commissioner's decision is AFFIRMED, and

plaintiff's complaint is DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     July 15, 2022
           Syracuse, NY          _____
                                 DAVID E. PEEBLES
                                 U.S. Magistrate Judge